Sunflower Compress Co. *et al. v.* Staple Cotton Co-op. Ass'n.[*]

(Division A.  May 4, 1925.)

[103 So. 802.  No. 24680.]

1. Injunction. *Injunction will not lie to restrain prosecution of replevin to recover property by claimant not holder of warehouse receipts issued therefor.*

    The right of a warehouseman to decline to deliver property stored with it unless and until the receipts issued by it therefor are surrendered, or their negotiation enjoined, can be fully protected in an action of replevin. Consequently an injunction will not lie to restrain the prosecution of such an action for the recovery of the property by a claimant who is not the holder of the receipts issued therefor.

2. Interpleader. *Bill, not framed on theory that complainant wishes to interplead, can be maintained only if based on ground of equitable jurisdiction other than conflicting claims.*

    A bill, not framed on the theory that the complainant desires only to be permitted to bring the fund or property, the subject of litigation, into court, and thereupon be discharged from liability to the adverse claimants thereof, can be maintained only when based on a ground of equitable jurisdiction other than conflicting claims to the fund or property involved.

*Headnotes 1.  Injunctions, 32 C. J., Section 99; 2. Interpleader, 33 C. J., Section 6.

APPEAL from chancery court of Sunflower county.

HON. E. N. THOMAS, Chancellor.

Suit by the Sunflower Compress Company against the Staple Cotton Co-operative Association and others. From decree dissolving injunction, complainant and others appeal. Affirmed and remanded.

*Chapman, Moody & Johnson,* for appellants.

This case presents two questions:

## I.

THE RIGHT OF THE APPELLANT TO FILE A BILL, IN THE NATURE OF AN INTERPLEADER, AGAINST THE APPELLEE AND ALL KNOWN CLAIMANTS, REQUIRING THEM TO LITIGATE THEIR RESPECTIVE RIGHTS TO THE COTTON DEPOSITED WITH IT AND FOR WHICH NEGOTIABLE RECEIPTS WERE ISSUED; AND, AS INCIDENTAL THERETO, ENJOIN THE PROSECUTION OF THE ACTION OF REPLEVIN THERETOFORE INSTITUTED BY THE APPELLEE, UNTIL THE RESPECTIVE RIGHTS OF ALL PARTIES TO THE IMMEDIATE POSSESSION OF SAID COTTON SHOULD BE FINALLY ADJUDICATED BY THE COURT. This question relates solely to that feature of the bill whereby an action of replevin, instituted by the appellee against the appellant, was enjoined, in order that all known claimants, named in the bill as defendants, might contest with the appellee the right to the possession of the cotton, the subject of this action.

The first question is: Has the appellant, as defendant in said action, a full, adequate and complete remedy at law: and, if not, what remedy has it? Section 555, Hemingway's Code, only applies where the defendant disclaims any interest in the subject of the action, to which there are two or more claimants, to either of whom he is ready to deliver the property, but is unable to decide which is the rightful owner. *Snodgrass* v. *Butler,* 54 Miss. 283; *McAllister* v. *Sanders,* 107 Miss. 283, 65 So. 249.

Ample remedy is afforded, in the action of replevin, if there is no interpleader, to protect the lien for storage charges of the appellant, for "In a suit between the bailee and general owner the judgment should be limited to the value of the specific interest of the bailee in the property." *Jones* v. *Hicks,* 52 Miss. 682.

Yet, in order to protect its lien on the property, for such charges, the benefit of said section 555, is, as a remedy, denied to it. Therefore, in said action of replevin, a full, adequate and complete remedy is not afforded the appellant, if it be desired to protect its lien, for storage charges, and, at the same time protect itself against the adverse claim of the other defendants, named in the bill, and the holder of the receipts, if negotiated.

If it be borne in mind that the cotton, the subject of the action of replevin, was deposited in the public warehouse of the appellant by the owners thereof, for which negotiable receipts were issued, and as the record discloses, the appellee does not claim the right to the possession of said property through those parties, it is obvious that the Uniform Warehouse Receipt Act (chapter 218, Laws 1920), affords a remedy. Special attention is directed to the construction of sections, identical in terms, appearing in the Uniform Warehouse Receipt Act of New Jersey. *New Jersey Title, etc., Co.* v. *Rector,* 72 Atl. 968; *New Jersey Title, etc., Co.* v. *Rector,* 75 Atl. 931.

Under section 19, except as is provided in sections 17 and 18, the appellant could not, in said action of replevin, prove that the cotton, even if the appellee was the original owner, has been entrusted by it to another to obtain negotiable warehouse receipts, who, in violation of the trust imposed, negotiated the receipts to a purchaser in good faith for value, and that such holder has the right to the immediate possession of said cotton, by virtue of the negotiation of said receipts. *Commercial National Bank, etc.,* v. *Canal La. etc. Bank,* 60 L. Ed. (U. S.) 417.

## II.

The Right of the Appellant to an Injunction Restraining the Appellee from Instituting Similar Actions of Replevin for Cotton in the Possession of the Appellant and for Which Negotiable Receipts had Been Issued and Were Outstanding, Until Such Receipts Were First Tendered to it, or Their Negotiation Enjoined or Impounded by the Court. (a) The appellee, under no circumstances, had the right to the immediate possession of the cotton, deposited with the appellant and for which negotiable warehouse receipts have been issued by it, other than by virtue of such receipt.

In neither of the two affidavits, on which the writs of replevin were issued, nor in the cross-bill, does the appellee unreservedly make oath that it is entitled to the immediate possession of the cotton, delivered to the appellant and for which negotiable warehouse receipts were issued. To the contrary affidavits are made that the appellee is entitled to the immediate possession of said cotton "under and by virtue of its marketing agreement," with one of its members, a copy of which is attached to the affidavit in replevin.

Therefore the question squarely presented to the court is whether, under and by virtue of its marketing agreement and not as holder of the receipts, the appellee is entitled to the immediate possession of cotton, deposited in the warehouse of appellant and for which negotiable warehouse receipts were issued?

Thus the question arises would the negotiation of a warehouse receipt to a purchaser in good faith for value, in violation of the trust conferred on the member, be binding on the appellee. As bearing on this particular question, attention is directed to sections 40, 41 and 47 of the Warehouse Act, chapter 218, Laws of 1920.

Referring to the possession of the marketing agreement, heretofore quoted, it is obvious that the original title, or, at least, the possession of the cotton was in the member; that, by the express terms of the agreement, he

was directed to deliver the cotton at the nearest public warehouse, taking the receipt therefor which he was to endorse and deliver to the appellee. Thus, there can be no question but that the said warehouse receipts were entrusted to the member. Therefore, the question arises would the negotiation of the receipts by him, to a purchaser in good faith for value, be binding on the appellee, assuming that it was the owner, under an executory contract of sale.

An answer to this question demands an interpretation of the sections quoted above. This identical question, involving the construction of said sections, was presented to the supreme court of the United States and convincingly answered in the affirmative. *Vid. Commercial National Bank of New Orleans* v. *Canal La. Bank & Trust Co., et al.,* Ann. Cas. 1917E, 25, and 239 U. S. 520; *Campbell* v. *Farmers Bank,* 90 So. 436.

While it has been conceded, for the sake of argument solely, that the ownership of the cotton was in the appellee, by virtue of the marketing agreement, yet, we most earnestly contend, that the ownership of the cotton was not in the appellee, at the time said cotton was delivered to the compress, but in the member. 35 Cyc. 274-276; 35 Cyc. 276, Subdivision b; *Berry* v. *Waterman,* 71 Miss. 497, 15 So. 234; *Wachstetter* v. *Brown,* 58 So. 530.

Therefore, we insist, the appellee, solely by virtue of its marketing agreement, has no right whatever to the immediate possession of cotton, deposited in the warehouse of the appellant. To the contrary, if it has any such right, the same must be based on the warehouse receipt, duly endorsed to it.

b. As the appellant cannot claim, as owner, under the executory contract, it can only claim, as agent, but, as agent it can only have a right to the possession of the cotton, under and by virtue of the receipt. Therefore,

1. If such receipt be lost or destroyed an action of replevin cannot be maintained for the cotton. The sole remedy given is that ''a court of competent jurisdiction

may order the delivery of the goods (cotton) upon satis-
factory proof of such loss or destruction, and upon its
giving a bond with sufficient sureties to be approved by
the court to protect the warehouseman (the appellant)
from any liability or expenses, which he or any person
injured by such delivery may incur by reason of the orig-
inal receipt remaining outstanding;'' section 14.   2. As
the holder of such receipt, by virtue of which the im-
mediate possession of the cotton can only be claimed, an
action of replevin cannot be maintained unless the re-
ceipt be first surrendered (or tendered) to the warehouse-
man (the appellant); or 3. If such receipt, only by vir-
tue of which the immediate possession of said cotton can
be claimed, be held by a third party, an action of replevin
therefor cannot be maintained unless its negotiation be
enjoined or impounded by the court.

In support of our contention to the effect that a public
warehouseman who delivers the goods without obtaining
a surrender of the receipt, is liable to the holder of the
receipt we direct attention to *Manufacturers' Mercantile
Co.* v. *Monarch Refrig. Co.,* 107 N. E. 885.

Section 25, referred to in the opinion and which is
the same section that appears in our act, applies to an
action of replevin.   When the section does apply a judg-
ment against the warehouseman, for the goods deposited,
will not relieve it from liability to the holder of a re-
ceipt therefor.   As throwing light on the interpretation
of section 25, we direct attention to *Salant* v. *Pa. Ry. Co.,*
178, N. Y. Sup. 285; *Salant* v. *Pa. Ry. Co.,* 177 N. Y. Sup.
475; *Goldstein* v. *Banker, et al.,* 183 N. Y. Sup. 460. As to
the proper interpretation of the words ''or otherwise,''
appearing in section 25, of the Uniform Warehouse Re-
ceipt Act, we call special attention to *Hawkes* v. *Ander-
son,* 70 Miss. 639; and *Miller* v. *Delta Pine Land Co.,* 74
Miss. 110.

If the conclusions stated are sound, then the appellee,
under no circumstances, has the right to maintain an ac-
tion of replevin against the appellant for cotton in its
possession, deposited by the owner and for which nego-

tiable warehouse receipts are issued, unless the receipts are tendered, their negotiation enjoined or impounded by the court. If that be sound, then the following is presented.

c. The bill charges, and the answer admits, that the appellee has instituted two actions of replevin, against the appellant, for cotton in its possession; that it does not claim the right to the possession thereof by virtue of receipts, issued therefor; that it has not tendered the receipts or had their negotiation enjoined or impounded by the court; that, under the same conditions, the appellee will continue to carry out its threats and institute additional actions of replevin, against the appellant, for cotton in its possession. Therefore, a court of equity, by injunction, should protect the appellee in its right to be exonerated from liability to the holder of the receipts, and also from such vexatious and harassing litigation, especially when it appears that the appellee has no right to the subject of such actions, and such actions are expressly prohibited by the statute.

The right of the appellee to prevent, by injunction, a continuity of replevin suits, by the appellee against it, when it appears that, under no circumstances, has such appellee the right to the possession of the cotton for which said actions are, and are threatened to be, instituted, is based not altogether on the theory of a multiplicity of suits, or as vexatious and harassing litigation. It is based, as we shall endeavor to make clear, on the said right vested in the appellant, as a public warehouseman, by the law, under which it is doing business, which right is, and is threatened to be, invaded.

Before directing attention to the principles of law, relied on, we deem it necessary to call attention to the right invaded, and threatened to be invaded, by such acts, that you may see that it is not a mere abstract right, but one, the invasion of which, results in irreparable damage to the appellant. The amount of charges, for storage or storage and compression, to which the complainant would be entitled, in handling cotton, is of minor consequence

as compared with the attorney's fees it would be forced to pay, in defending such actions, which fees, so paid, would be an irreparable loss, in that it would have no right of action therefor against the appellee, as plaintiff, in such actions.

We admit that the relief sought, by injunction, to protect the appellant from the invasion of its rights, is, to some extent, novel, yet "It is not a fatal objection that the use of the writ for the particular purpose for which it is sought is novel. Courts may amplify remedies and apply rules and general principles for the advancement of substantial justice. If this was not so, and courts were confined to particular precedents, there would be no power to grant relief in new cases continually occurring." 32 C. J. 34, sec. 13.

Though asserting that equitable, as well as legal, rights are entitled to the protection of equity by injunction, yet, we recognize that: "The existence of a right violated is a prerequisite to the granting of an injunction." Ib. 34, sec. 14. In not one of such actions, instituted in violation of the provisions of said section 25, could an attorney's fee be recovered from the appellee, or for that matter, in a subsequent suit. Therefore, as to the amounts necessarily expended, including an attorney's fee, in the defense of such action, the injury is irreparable, notwithstanding the solvency of the appellee, though its solvency may be doubted, owing to the nature of the appellee, as a corporation. Such an irreparable damage is "due to the nature of the injury itself," or at any rate "to the nature of the right—injured."

Section 25 of the Warehouse Act, heretofore quoted, is more than a mere prohibition. By its express terms a right is vested in the warehouseman, to be exonerated from the obligations imposed on it by the act, to retain the cotton until the receipt therefor is surrendered. Therefore, when such right is invaded and threatened to be invaded, a court of equity, by injunction, will protect the same, if, as a consequence, irreparable damage to it will result.

*R. C. McBee,* for appellee.

WHEN THE ANSWER DENIES THE FACTS IN THE BILL THE INJUNCTION FAILS. Gibson's Suits in Chancery, 655-656; *Bowen* v. *Haskins,* 45 Miss. 188, 7 Am. Rep. 728; *Richardson & May* v. *Lightcap,* 52 Miss. 508.

The owner of goods can maintain a replevin suit when his goods are deposited with a warehouseman, without his authority, knowledge or consent, even though the warehouseman has outstanding warehouse receipts for such goods. *In re Dreuil & Co.,* 205 Fed. 568; Williston on Sales (2 Ed.), 993, 1038, 1041, 1080, 1081, 1043; Preface, Williston on Sales; Section 57, Williston on Sales; *Commercial Nat. Bank* v. *Canal-Louisiana B. & T. Co.,* 239 U. S. 520, 60 L. Ed. 417; *Burrage* v. *Melson,* 48 Miss. 237; Williston on Sales (1 Ed.), 640; *Insurance Co.* v. *Kiger,* 103 U. S. 352, 26 L. Ed. 433, cited in Williston on Sales (2 Ed.), 1040; *Merchants Nat. Bank* v. *Bales,* 41 So. 516; *Hentz* v. *The Idaho,* 93 U. S. 575, 23 L. Ed. 978; 3 Am. & Eng. Enc. of Law (2 Ed.), 762; Section 25, Uniform Warehouse Law; *Salant* v. *Pennsylvania R. R. Co.,* 177 N. Y. S. 475; *Scottsdale Ginning Co.* v. *Longan,* 209 Pac. 877; *Campbell* v. *Farmers' Bank of Boyle,* 90 So. 436; *Marine Bank & Trust Co.* v. *Greenville Savings Bank & T. Co.,* 133 Miss. 91, 97 So. 526; Section 10, Uniform Warehouse Law; Section 275, Laws of Mississippi 1924, secs. 1 & 2; *Brown* v. *Staple Cotton Co-operative Assn.,* 131 Miss. 859-889; *Cole-McIntyre-Norfleet Co.* v. *Dubard,* 135 Miss. 20-32; *Lloyd* v. *Goodwin,* 12 S. & M. 223; *Buck* v. *Payne,* 53 Miss. 27; *Scarborough* v. *Lucas,* 119 Miss. 128; *Berry* v. *Waterman,* 71 Miss. 497; *Wachstetter* v. *Brown,* 58 So. 530; Section 3071, Hemingway's Code; *Woolner* v. *Spalding,* 65 Miss. 204, 3 So. 583; *Manufacturers' Mercantile Co.* v. *Monarch Refrig. Co.,* 107 N. E. 885; *Goldstein* v. *Societa Veneziana, etc.* (1920), 193 App. Div. 168, 183 N. Y. S. 460.

THE LAW OF INTERPLEADER. 33 C. J. 420; Sections 555 and 3061, Hemingway's Code; *Scarborough* v. *Lucas,* 119

Miss. 128; Section 18, Uniform Warehouse Act; Story's Eq. P. (10 Ed.), sec. 297; Whitehouse Eq. Pr., 240, 238; *Quinn* v. *Hart,* 85 Miss. 67, 71; 33 C. J. 419; 430; Pom. Eq. Juris, sec. 1328; *Briant* v. *Reed,* 14 N. Y. Eq. 276; *Blair* v. *Porter,* 13 N. J. Eq. 267; Story Eq. Pl., sec. 292; 2 Story Eq. Juris., sec. 821; *Cras* v. *Memphis & C. R. R.,* 11 So. 480; *Centralia* v. *D. W. Norton & Co.,* 140 Ill. App. 46 (1908); *Wallace* v. *Sortor,* 52 Mich. 159 (1883); *Blue* v. *Watson,* 59 Miss. 619 (1882); *Kippinger* v. *O'Donnell,* 16 R. I. 417 (1889); *Pusey, etc., Co.* v. *Miller,* 61 Fed. 401 (C. C. 1894); Whitehouse Eq. Prac., Note 238; *Browning et al.* v. *Watkins et al.,* 10 Smedes & M. 482; *Snodgrass* v. *Butler,* 54 Miss. 45; *McAlister Bros. & Co.* v. *Sanders,* 107 Miss. 283; 11 Enc. Pl. & Pr. 467; Pom. Eq. Jur., sec. 1480; *Whitney* v. *Cowan,* 55 Miss. 626; Mitford's Pl., 143; 2 Story's Eq. Jur., sec. 809; Story's Eq. Pl., sec. 297; 3 Daniell's Chan. Prac., 1761; *Shaw* v. *Coster,* 8 Paige 339; *Mt. Holly, Lumberton & Medford Turnpike Co.* v. *Farree et al.,* 17 N. J. Eq. 117.

An Injunction Cannot be Maintained Against a Suit at Law When the Defense Urged May be Used in the Action at Law. High on Injunctions, 100, 103; *Pickett* v. *Filer & Stowell Co.,* 40 Fed. 313; *Covell* v. *Heyman,* 111 U. S. 176, 28 L. Ed. 390; High on Injunctions, 75; *Insurance Co.* v. *Warren-Gee Co.,* 60 So. 1010; *R. R. Co.* v. *Walker, et al.,* 60 So. 1014; *Newton Oil Co.* v. *Sessums, et al.,* 59 So. 9; *Telegraph Co.* v. *Williamson et al.,* 101 Miss. 1, 57 So. 559; High on Injunctions, 106; *Farrell* v. *Harlem Terminal Storage Warehouse Co.,* 127 N. Y. S. 306; *Ludwig* v. *Roth,* 123 N. Y. S. 191; *Young* v. *Colyear,* 201 Pac. 623.

Argued orally by *C. C. Moody,* for appellant, and *R. C. McBee* and *Leroy Percy,* for appellee.

Smith, C. J., delivered the opinion of the court.

This is an appeal, to settle the principles of the case, from a decree dissolving an injunction.

139 Miss.—14

The appellant was the complainant in the court below, and its bill alleges that it is a public warehouseman, and as such received a number of bales of cotton from the producers thereof, and issued its negotiable receipts therefor; that the appellee was not the producer and was not the owner of the cotton at the time it was stored with the appellant, but has instituted actions of replevin therefor, and is threatening to institute similar actions in the future for cotton stored with the appellant and claimed by the appellee. The parties defendant to the bill, in addition to the appellee, are the sheriff, who executed the writs of replevin, and the persons who stored the cotton with the appellant. The bill alleges that—"Complainant does not know, nor has it any way to know, who claims title to the said cotton, now in its possession, and for which negotiable warehouse receipts have been issued, other than by reference to a record of the receipts kept by it, which shows the names of the parties delivering said cotton, and to whom said receipts therefor were delivered. Your complainant now names, as defendants, all of those to whom said receipts were issued at the time said cotton, now in its possession, was delivered to it, all being tenants, except D. S. Lovelace, who produced said cotton, and, at the time of delivery, were the owners thereof, to the end that said parties, so named as defendants, may interplead with the complainant the right to the possession of said cotton. Your complainant is ready and willing to deliver said cotton to whomsoever the court may direct, but it charges that, until the said receipts therefor are delivered to it, or their negotiation enjoined or impounded by the court, it should, as the law directs, retain possession of said cotton, and not be required by the court to deliver said cotton to the complainant, or any of the defendants, until the aforesaid conditions are complied with."

The prayer of the bill is for process for the defendants thereto, and—"that the defendant, the said Staple Cotton Co-operative Association, by a temporary injunction, be enjoined and restrained from further prosecuting the

said action of replevin herein last above referred to, pending in the circuit court of said Sunflower county, and numbered 4828 on the docket thereof; that the said defendant J. R. Boyett, as such sheriff, be likewise enjoined and restrained from levying or attempting to levy the writ of replevin heretofore issued in said cause, which is now in his hands; that the defendant, the said Staple Cotton Co-operative Association, by like injunction, be enjoined and restrained from instituting any further actions of replevin for cotton now or hereafter in the possession of the complainant, for which said cotton negotiable warehouse receipts, as hereinabove charged, have been issued and are outstanding, unless and until said receipts for such cotton are first tendered to your complainant, or the negotiation of the same has been enjoined or impounded by the court, and that upon final hearing said injunction may be made perpetual.''

The Staple Cotton Co-operative Association, by an answer, claims that it is, and was at the time it was stored with the appellant, the owner of the cotton, and that it was stored with the appellant without its knowledge or consent, and denies the right of the appellant to an injunction restraining the prosecution by the association of its action of replevin.

According to the brief of counsel for the appellant, two questions are presented for decision by this record:

''First. The right of the appellant to file a bill, in the nature of an interpleader, against the appellee and all known claimants, requiring them to litigate their respective rights to the cotton deposited with it and for which negotiable receipts were issued; and, as incidental thereto, enjoin the prosecution of the action of replevin theretofore instituted by the appellee, until the respective rights of all parties to the immediate possession of said cotton should be finally adjudicated by the court; and

''Second. The right of the appellant to an injunction restraining the appellee from instituting similar actions of replevin for cotton in the possession of the appellant, and for which negotiable receipts had been issued

and were outstanding, until such receipts were first tendered to it, or their negotiation enjoined or impounded by the court.''

If the appellant has the right, under chapter 218, Laws of 1920, to decline to deliver to the appellee the cotton here in question, or any that may be hereafter stored with it and claimed by the appellee, unless and until the receipts issued by it therefore are surrendered or their negotiation enjoined, as to which we express no opinion, the facilities for asserting such right in an action of replevin are full and complete, and consequently an injunction will not lie to restrain the appellee from bringing such an action.

The bill is not framed on the theory that the complainant desires only to be permitted to bring the cotton into the court and thereupon be discharged from liability to the adverse claimants. Consequently, it cannot, and in fact is not sought to, be maintained as a bill of interpleader. It cannot be held to be a bill in the nature of an interpleader, for such a bill must be based on a ground of equitable jurisdiction other than conflicting claims to the money or property involved (*Blue* v. *Watson,* 59 Miss. 619; 33 C. J. 423), and no such ground appears here. It is true that the appellant, as suggested by its counsel, must account for the cotton to the holders of the receipts issued by it therefor (*Burrow* v. *Planters' Oil Mill* [Miss.], 103 So. 9), but the rights of such holders can be as well protected by the appellant in an action of replevin as in the present suit.

The gravamen of the bill is that the appellant be not required to deliver the cotton to any of the defendants thereto unless and until the receipts issued by it therefor are surrendered, or their negotiation enjoined, which relief, in event the appellant is entitled thereto, can be awarded in an action of replevin.

The decree of the court below will be affirmed, and the cause remanded.

*Affirmed and remanded.*